MARY BUTLER, PLAINTIFF-RESPONDENT, v. RUDOLPH
EBERSTADT, DEFENDANT-APPELLANT.

Submitted May 25, 1934—Decided October 5, 1934.

570

For the respondent, *Thomas P. McKenna* (*Theodore D. Parsons,* of counsel).

For the appellant, *Wall, Haight, Carey & Hartpence* (*John A. Hartpence,* of counsel).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. The plaintiff below, Mary Butler, was awarded damages at the Monmouth County Supreme Court circuit for personal injuries received in an automobile accident. The defendant appeals from the judgment entered thereon.

From the record in this case, it appears that the plaintiff entered the service of the defendant on May 27th, 1931, as a cook. She testified she merely went to the home of the defendant on that day to prepare lunch because of the illness of the regular cook and that after lunch Mrs. Eberstadt, wife of the defendant, asked her if she would not continue her service for a few days and accompany the family of the defendant to the summer home on Long Island over Decoration Day. The plaintiff agreed and went to Long Island for the time requested and on Sunday, May 31st, on the return trip from Long Island, the defendant's automobile, driven by his chauffeur and carrying as passengers the plaintiff and three young children of the defendant as well as a nursemaid, collided with another machine on the Harrison-Kearny turnpike in Hudson county, New Jersey, as a result of which the plaintiff sustained serious injuries. Thereafter on September 12th, 1932, she brought this suit against the defendant, the employer, in the Supreme Court, for damages for the injuries received on the theory that her employment being, as she claimed, casual in character, afforded her a common law

action since she was outside that class of employes entitled to compensation under section 2 of our Employers' Liability act. *Pamph. L.* 1911, *ch.* 95, *p.* 134. Subsequently, on May 27th, 1933, four days before the time limit, fixed by that statute (*supra*) for the filing of claims for compensation, would have expired, a petition for compensation was filed by her in the compensation bureau. Obviously this course was pursued by the plaintiff as a measure of caution to keep alive her claim if it should be determined in the Supreme Court that she was a regular employe of the defendant and therefore entitled to compensation, as provided by the statute.

The defendant answered the petition filed in the compensation bureau and admitted that compensation was payable in the case. The defendant thereupon amended his answer already filed in the Supreme Court action, by annexing thereto a copy of the petition for compensation and a copy of his answer admitting that compensation should be paid and reiterated the defenses already pleaded that he was not liable for damages sustained by the plaintiff through any act or default, if any there was, on the part of the chauffeur, since they were fellow servants. The answer further averred that the plaintiff was a regular and not a casual employe, having been hired for a month at a fixed salary; that she was injured by an accident arising out of and in the course of her employment and that the provisions of the Employers' Liability act applied to her and that her claim should be sent to the compensation bureau for determination as to the amount of compensation.

When the case was reached for trial at the Monmouth Circuit the defendant moved that this common law action be dismissed for lack of jurisdiction, which motion was denied. This denial is presented as one of the grounds of appeal. It is also argued by the appellant that the trial court should, as a matter of law, at the end of the entire case, have ruled that the employment of the plaintiff was regular and not casual and that therefore the action should have been dismissed or a verdict directed for the defendant on this ground. Both these questions may be treated together. The trial court cor-

rectly disposed of these motions. It is true that the compensation bureau, under the statute as supplemented (*Pamph. L.* 1918, *ch.* 149, *p.* 430, § 3), has sole jurisdiction to award compensation to an injured employe whose injury arose out of and in the course of the employment, in cases where the employment admittedly is or is determined by the bureau to be, regular, and this jurisdiction is exclusive. It is likewise true that the bureau was completely competent to determine this preliminary question, that is, whether the employment was regular or casual—if the plaintiff had in the first instance come to that forum for a determination of that question and if her employment was casual, her petition would have been dismissed. Thereafter she would have the privilege of instituting suit in a law court if she wished.

In the bureau the referee, representing the commissioner of labor, is judge of both law and fact. In a common law court a jury determines the fact. The judge is powerless to do so. Therefore, as to a preliminary question of this character, the jurisdiction of the compensation bureau and a common law court is co-equal. Since then the plaintiff's cause of action depended upon the character of her employment, whether casual or regular, and that was a fact question, it follows that the court was without power, *in limine,* to dismiss the plaintiff's suit at law. *Cf. Boyle* v. *Van Splinter,* 101. *N. J. L.* 89.

As to the second question, that the trial court should, as a matter of law, at the end of the plaintiff's case or at the end of the entire case, have dismissed the action or directed a verdict for the defendant *on that ground,* viz., that the employment was regular, the appellant relies upon the statute (supplement, *Pamph. L.* 1918, *supra*) which provides that "the commissioner of labor" * * * shall have exclusive, original jurisdiction of all claims for compensation arising under the act to which this act is a supplement," &c. This provision does not support the appellant's argument. It means this and only this—that where claims are made for compensation in cases arising under the statute, the bureau shall have jurisdiction, exclusively to hear and determine

them. It has this exclusive jurisdiction where a claim for compensation is made by an employe, *comprehended by the statute,* against the employer and applies solely to the hearing and determination of that class of litigation. As has been said, the bureau also might have decided the question of the character of this plaintiff's employment and if it was found to be casual the bureau could proceed no further with the cause any more than a common law court could award compensation for injuries after it had been there determined that a plaintiff's employment was regular and was controlled either expressly or impliedly by section 2 of the statute.

There is no dual jurisdiction in the bureau and a common law court to award compensation to employes who come within the provisions of section 2 of the statute. That jurisdiction is the exclusive prerogative of the compensation bureau and, conversely, the bureau is not empowered to award compensation or damages to employes who by act of the parties, employer and employe, come within the provisions of section 1 of the statute. This is the exclusive prerogative of a law court. Here the plaintiff testified to facts that would entitle a jury to believe that her employment was casual, while the defendant supplied testimony that could support a finding that the employment was regular. In this discrepant state of the testimony the determination of the point in dispute was for the jury. Therefore the court committed no error in refusing to dismiss before the case was tried or in refusing to direct a verdict in favor of the defendant *on that ground.*

The next ground of appeal charges that the trial court erred in ruling as a matter of law that the "fellow servant" doctrine did not apply and was not a bar to the plaintiff's action. The court in this respect charged the jury as follows: "There was some suggestion that she, the plaintiff, and the chauffeur were involved in a common employment. I am not submitting that question to you, because it is not before you, and I have held as a matter of law that her right to recover, if you so find under the other phases of the law and the evidence, would not be prevented because she was

employed by Mr. Eberstadt in his household and the chauffeur likewise was in his employ."

An appropriate exception to this part of the charge was stated on the record by counsel for the defendant.

Immediately prior to the charge of the court there was a motion for a directed verdict for the defendant on the ground that Mrs. Butler was the fellow servant of Lauder, the chauffeur, which motion was denied. On both these legal questions the trial court fell into error.

Upon what theory the court rejected the fellow servant rule and charged the jury, as quoted above, was not stated by the learned trial judge, but, we assume that he relied upon the first and second paragraphs of section 1 of the Employers' Liability act, *supra*. The first paragraph provides for compensation to an employe from an employer in a suit at law. The second paragraph abolishes the defenses of fellow servant negligence and assumption of risk, &c., which were good at law before the adoption of the statute. These provisions of the second paragraph are not helpful to this plaintiff because of the provisions of paragraph 23-c of section 3 of the statute which, in part, reads: "* * * employe is synonymous with servant, and includes all natural persons who perform service for another for financial consideration, exclusive of casual employments, * * *."

It is clear therefore that the legislature, by excluding those in *casual employments* from the confines of the definition of the term "employe," strictly limited the term "employe" to those who are *regular* employes and that this statute, with precision, comprehends only the corelative liabilities and rights of employers and regular employes.

Section 2 applies to the rights of regular employes to receive compensation from the employer when injury to or death of such employe occurs and has arisen out of and in the course of employment, providing the provisions of the section have been expressly or impliedly accepted. Section 1, on the other hand, applies to the rights of the regular employe against his employer when, by written notice from either to the other, it is made manifest that the provisions

of section 2 are not to govern. (Cf. section 2, paragraph 9.) It follows therefore that a *casual* employe is not an employe at all in the statutory sense, so far as the Employers' Liability act is concerned. The word employe as applied to one who has been casually hired, as here, is a misnomer.

Another provision of this statute might be considered to present some difficulty, namely, section 3, paragraph 24, the pertinent part of which is as follows: "Section 1 of this act shall not apply in cases where section 2 becomes operative in accordance with the provisions thereof, but shall apply in all other cases, and in such cases shall be in extension of the common law."

Upon analysis, this excerpt contains two legal declarations, (a) that section 1 has no application in the rights and liabilities of employe and employer where the parties have agreed to, or are bound by, the provisions of the second section, and, (b) in all other cases of *regular* employment, where a regular employe suffers injury or death, arising out of and in the course of the employment, and suit is brought in a law court, by himself for personal injury or by his administrator for death, the common law defenses enumerated in the second paragraph of section 1 are abolished.

There is no room for any other judicial construction. The legislature has defined its own terms and courts are bound by the definitions written into the statute itself.

Applying this reasoning to the case at hand, it becomes manifest that the plaintiff here, if she was as she says a casual employe, is not an employe in contemplation of the statute, is wholly outside its provisions, and therefore not entitled to the benefits of paragraph 2 of section 1 which abolishes the defense of assumption of risk and fellow servant negligence. That being so, it follows that her action at law is subject to the common law defenses of assumption of risk and fellow servant negligence.

The first evidence of what is known as the fellow servant rule appeared in the old case of *Priestly* v. *Fowler, 3 M. & W.* 1, decided in England in 1837. The rationale of the decision of that case is that to allow a servant to recover

against the master for injury occasioned by the negligence of a fellow servant would be to encourage such servant to omit that diligence and caution which he is bound to exercise in his master's behalf to protect him against the misconduct or negligence of other employes, which diligence and caution though they protect the master, are a better security against the servant being injured than any recourse against the master for damages could afford. The same rule was adopted in Massachusetts in the case of *Farwell* v. *The Boston and W. R. Corp., 4 Met. (Mass.)* 49. The reasoning of that often cited opinion is that the *"implied contract* of the master does not extend to indemnify the servant against the negligence of anyone but the master; and he is not liable in tort as for the negligence of his servant because the person suffering [that is, the injured fellow servant] does not stand toward him in the relation of a stranger but is one whose rights are regulated by contract express or implied."

As to who are fellow servants, the rule quoted by the greatest number of adjudged cases is "that all who serve a common master, work under the same control, derive authority and compensation from the same common source, and are engaged in the same general business, though it may be in different grades or departments of it, are fellow servants who, under the rule under consideration, are deemed to take the risk of each other's negligence." 4 *Thomp. Negl.* § 4917.

The fellow servant rule has been treated by the Supreme Court of the United States as being supported in justice by the principle that the negligence of a servant resulting in injury to a fellow servant does not of itself prove any omission of care on the part of the master in his employment, and it is only such omission of care that would justify holding the master answerable for damages under these circumstances. *Baltimore and Ohio Railroad Co.* v. *Baugh,* 149 *U. S.* 368, 378, 386; 13th *Sup. Ct.* 914.

In New Jersey the rule is as follows: "A master is not liable to a servant for the negligence of a fellow servant while the two are engaged in the same common employment, unless for negligence in the selection of the servant in fault, or in

retaining him after notice of his incompetency. * * * A
fellow servant I take to be anyone who serves and is con-
trolled by the same master. Common employment is service
of such kind that, in the exercise of ordinary sagacity, all
who engage in it may be able to foresee, when accepting it,
that through the negligence of fellow servants, it may prob-
ably expose them to injury. The ground on which rests
the exemption of the master from liability to the servant for
negligence of a fellow servant, engaged in common employ-
ment, is, that the servant is presumed to contract in reference
to the risk incurred. * * * *McAndrews* v. *Burns,* 39
*N. J. L.* 117, 119; *Whart. Neg.* 224, 234; *Shear & Redf.
Neg., ch. 6,* cases cited; *Harrison* v. *C. R. R. Co.,* 31 *N. J.
L.* 293."

In the case under consideration the plaintiff, according to
her own testimony, received word at an employment agency
that she was at first hired to cook the lunch in the home of
the defendant. After receiving this information by tele-
phone at the agency the chauffeur, Lauder, called for her in
an automobile and took her to the home of her employer.
Later it developed that she would be needed in the summer
home on Long Island and, requiring additional clothes, the
chauffeur took her in the automobile to her sister's house to
get those clothes and brought her back in the automobile to
the defendant's house. She likewise made the journey to
Long Island in an automobile driven by her mistress and
returned by automobile, driven by the chauffeur, to New
Jersey at the time the accident happened.

In order to class employes as fellow servants it is not
necessary that they be performing the same task or be in the
same department of service but rather that they be employed
by the same master for the same general purpose.

On a motion for nonsuit in the case of *Imbesi* v. *American
Ice Co.,* 101 *N. J. L.* 182, 183, this court held where it
appears that the injury complained of was caused by an act
of a fellow servant, it is the duty of the trial court to nonsuit.

Cases where the fellow servant rule is invoked rarely arise
in our courts in these days due to the passage of the

Employers' Liability act in 1911, but the cases on the rule are legion and may be found collected in *Sofield* v. *Guggenheim Smelting Co.*, 64 *N. J. L.* 605; *Curley* v. *Hoff*, 62 *Id.* 758.

Thus it appears that this plaintiff, if she be a casual employe as she claims, possesses a status not beneficially recognized by the Employers' Liability act. She therefore of necessity must be a common law servant and the chauffeur, although a regular employe, was her fellow servant. They were in the employ of the same master, the testimony on this point being that the wife of the defendant hired the help under the defendant's general authority so to do, and for the same general purpose, *i. e.*, the domestic comfort and well-being of the members of the household. The negligence of the chauffeur fellow servant was a circumstance that she must as a matter of law be presumed to have taken into consideration and the risk thereof assumed.

The other grounds for reversal presented need no discussion. The motion for direction of verdict should have prevailed.

The judgment is reversed, with costs.

*For affirmance*—DONGES, HETFIELD, WELLS, JJ. 3.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, HEHER, PERSKIE, VAN BUSKIRK, KAYS, DEAR, JJ. 12.